FILED
2014 Nov-26  AM 11:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

JWV/TMJ/MKA Dec 2014
GJ #14

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Case No.** |
| | ) | |
| JONATHAN WADE DUNNING, | ) | |
| Defendant. | ) | |

## INDICTMENT

The Grand Jury charges:

At all times relevant to this Indictment:

## Introduction

1.    The Health Resources & Services Administration ("HRSA") resides within the United States Department of Health and Human Services ("HHS"), and is an agency of the United States. HRSA is the primary federal agency tasked with improving access to health care by strengthening the health care workforce, building healthy communities, and achieving health equity. Tens of millions of Americans obtain affordable health care and other help through HRSA's 100-plus programs and more than 3,000 grantees.

2.    Birmingham Health Care ("BHC") is a non-profit organization located in Birmingham, Alabama. BHC's stated mission is to provide no-cost and low-cost

health services to homeless and economically disadvantaged segments of the population in and around the Birmingham, Alabama, area, including primary medical and dental care for children and adults who are underserved, homeless persons, and individuals that fall below the Federal Poverty Level. BHC began receiving grant funds from HRSA over twenty years ago, and continued to receive grant funds at all times relevant.

3.      Central Alabama Comprehensive Health, Inc. ("CACH") is a non-profit organization located in Tuskegee, Alabama. CACH's stated mission is to provide access to primary and preventative health care to individuals residing in East Alabama without regard to their ability to pay for such services. CACH began receiving grant funds from HRSA over twenty years ago, and continued to receive grant funds at all times relevant.

4.      HRSA administers a variety of grant programs designed to fund particular projects and serve specified purposes. One such program is the Community Health Center ("CHC") program. Its purpose is to provide a safety net for the nation's medically underserved populations, such as the uninsured, the poor, homeless persons, migrant and seasonal farm workers, and public housing residents by developing a health care system to provide these services. CHCs must develop bylaws that include policy provisions that prohibit conflicts of

interest by board members, employees, consultants, and those who furnish goods or services to the health center.

5.      The Black Lung Clinic Program was implemented to support clinics with federal funding to seek out and provide services to active and inactive coal miners to minimize the effects of job-related respiratory impairment, improve the health status of miners exposed to coal dust, and to increase coordination with other benefit programs.

6.      The American Recovery and Reinvestment Act ("ARRA") afforded additional federal funding to include approximately $500 million for New Access Points ("NAP") and $1.5 billion for the Capital Improvement Program ("CIP"). The CIP grant allows funding for projects that involve construction, alteration/repair/renovation, equipment, and health information technology.

7.      CACH and BHC have applied for and received millions of dollars in various federal grants from HRSA, including those listed above. Federal grants administered by HRSA and HHS constitute the majority of CACH and BHC's funding.

8.      In or about 2008, BHC, located in Birmingham within Jefferson County, within the Northern District of Alabama, became the entity in charge of the fiscal affairs of CACH, located in Tuskegee, Alabama.

9.      Defendant **JONATHAN WADE DUNNING** was the Chief Executive Officer ("CEO") of BHC until late 2008.  Defendant **DUNNING** also served as the CEO of CACH for a time.

10.      In late 2008, Defendant **DUNNING** vacated the CEO position at BHC purportedly to operate companies for which he was the registered agent and/or incorporator. Defendant **DUNNING's** companies—in existence at that time and later formed—included Synergy Medical Solutions, incorporated in August 2006; Synergy Billing Solutions, incorporated in March 2008; Synergy Health Link, incorporated in August 2008; Legacy Consulting Group, incorporated in August 2008; Synergy Real Estate Holdings, incorporated in October 2007; Synergy Real Estate Holdings II, incorporated in December 2009; Synergy Real Estate Holdings III, incorporated in January 2010; and Synergy Real Estate Holdings IV, incorporated in February 2012 (hereinafter "Synergy Entities").  Defendant **DUNNING** additionally incorporated Integrated Health Systems of Alabama in August 2006 (later reconstituted as Integrated Health Systems Alliance in July 2008) (hereinafter "IHSA").

11.      Defendant **DUNNING** remained a paid consultant at BHC after he vacated the CEO position at BHC.

12.     Defendant **DUNNING** used his position as CEO of BHC and his subsequent position as a consultant to BHC, to obtain money and property belonging to BHC.

13.     At the initiation and direction of Defendant **DUNNING**, BHC and CACH entered into various agreements and arrangements whereby federal grant funds (including HRSA grants), assets, and property were transferred and diverted from BHC and CACH to the Synergy Entities and IHSA.

14.     Defendant **DUNNING**, aided and abetted by others known and unknown, caused financial transactions that resulted in transfers of funds and property from BHC and CACH to the Synergy Entities, IHSA, Defendant **DUNNING**, and others.  Some of those funds had come to BHC and CACH from HRSA grants.

15.     Defendant **DUNNING**, aided and abetted by others known and unknown, caused financial transactions that resulted in transfers of funds and property from the Synergy Entities and IHSA to Defendant **DUNNING** and others, thereby enriching Defendant **DUNNING** and others.  Said funds and property included HRSA grant funds first received by BHC and CACH and then transferred and diverted to the Synergy Entities and IHSA.

16.     Over the past six years, more than $14 million dollars have been transferred and diverted from BHC and CACH to the Synergy Entities and IHSA.

17.     Defendant **DUNNING** and others enriched themselves with the federal grant funds, assets, and property of BHC and CACH.

### COUNTS ONE THROUGH THREE
### Wire Fraud
### 18 U.S.C. §§ 1343 & 2

1.     The Grand Jury repeats and realleges the allegations contained in paragraphs 1 through 17 of the Introduction to this Indictment as though fully set out herein.

2.     Beginning in or about September 2007 and continuing to in or about December 2009, in Jefferson County within the Northern District of Alabama, and elsewhere, the defendant,

**JONATHAN WADE DUNNING**,

aided and abetted by others, known and unknown, did knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud the United States Department of Health and Human Services (HHS), the Health Resources & Services Administration (HRSA), Birmingham Health Care (BHC), and others of money and property, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises.

## Purpose of the Scheme and Artifice

3.       It was a part of the scheme and artifice that Defendant **DUNNING**, aided and abetted by others known and unknown, obtained for himself and others certain real property previously owned by BHC.

4.       It was a further part of the scheme and artifice that Defendant **DUNNING**, aided and abetted by others known and unknown, used money and property of BHC to obtain real estate that was then titled to the Synergy Entities.

5.       It was a further part of the scheme and artifice that Defendant **DUNNING**, in or about February 2008, caused BHC to sell property BHC owned located at 1600 20th Street South, Birmingham, Alabama; property located at 1942 16th Avenue South, Birmingham, Alabama; and property located at 1934 16th Avenue South, Birmingham, Alabama (hereinafter and collectively, the "Plaza Property") to a company that Defendant **DUNNING** controlled by the name of Synergy Real Estate Holdings (hereinafter, "SREH"), which had been incorporated in or about October 2007.

6.       It was a further part of the scheme and artifice that Defendant **DUNNING** caused the Plaza Property to be sold by BHC to SREH at far below the value of said property, resulting in the transfer of property value away from BHC to **DUNNING**.

7.    It was a further part of the scheme and artifice that, as a result of this sale, BHC no longer occupied the Plaza Property as its owner, but rather as a tenant – with its landlord being SREH.

8.    It was a further part of the scheme and artifice that, in or about late 2009, while serving as a paid consultant to BHC, Defendant **DUNNING** sought to buy a property located at 1401 24th Street North, Birmingham, Alabama (hereinafter, the "Norwood Property").

9.    It was a further part of the scheme and artifice that, in or about December 2009, Defendant **DUNNING** caused BHC's money and property to be used to purchase the Norwood Property, which then was titled to Synergy Real Estate Holdings II (hereinafter, "SREH II").

10.    It was a further part of the scheme and artifice that BHC's federal grant funds were "drawn down" from HRSA into BHC's Wachovia bank account in order to ensure that the balance in BHC's Wachovia bank account would be sufficient to allow the wiring of funds to purchase the Norwood property.

11.    It was a further part of the scheme and artifice that BHC's line of credit at Regions Bank was utilized in order to ensure that the balance in BHC's Regions bank account would be sufficient to allow the wiring of funds to purchase the Norwood property.

12.     It was a further part of the scheme and artifice that over $1 million of BHC's money was used to purchase the Norwood Property, which was titled solely to SREH II.

## THE WIRE COMMUNICATIONS

13.     On or about the dates set forth below, each such date constituting a separate count of this Indictment, in Jefferson County within the Northern District of Alabama, and elsewhere, the defendant,

## JONATHAN WADE DUNNING,

for the purpose of executing the above-described scheme and artifice, did transmit and cause to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals, and communications, that is, Defendant **JONATHAN WADE DUNNING** caused an interstate wire communication between Alabama and another state to be made for each transmission of funds listed below:

14.     The allegations of paragraphs 1 through 13 above are realleged for each of Counts 1 through 3 below as though fully set forth therein.

| COUNT | DATE | AMOUNT | SOURCE ACCOUNT | PAYEE |
|---|---|---|---|---|
| 1 | 12/16/09 | $10,000.00 | BHC Wachovia bank account x3498 | Commonwealth Land Title |
| 2 | 12/28/09 | $400,000.00 | BHC Regions bank account x3788 | Commonwealth Land Title |
| 3 | 12/29/09 | $652,432.47 | BHC Wachovia bank account x3498 | Commonwealth Land Title |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## NOTICE OF FORFEITURE

### [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.      The allegations contained in Counts One through Three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      Upon conviction of the offenses in violation of Title 18, United States Code, Section 1343 set forth in Counts One through Three of this Indictment, the defendant,

**JONATHAN WADE DUNNING**,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable

to the offense.

3.	If any of the property described above, as a result of any act or

omission of the defendant:

      a.	cannot be located upon the exercise of due diligence;

      b.	has been transferred or sold to, or deposited with, a third party;

      c.	has been placed beyond the jurisdiction of the court;

      d.	has been substantially diminished in value; or

      e.	has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title

28, United States Code, Section 2461(C).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL.


*/s/*
GRAND JURY FOREPERSON


JOYCE WHITE VANCE
UNITED STATES ATTORNEY


*/s/*
MELISSA K. ATWOOD
Assistant United States Attorney